UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLGA CABALLERO; JIE DU, by her next friend MICHAEL TONG; ALEJANDRA NEGRON, MARIANO VAZQUEZ, by his next friend IRAIDA VASQUEZ; and JUAN SANTOS, by his next friend RITA BAEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>SENIOR HEALTH PARTNERS, INC.; HEALTHFIRST, INC.; HF MANAGEMENT SERVICES, LLC; HEALTHFIRST HEALTH PLAN, INC.; XYZ CORPORATIONS 1-10; and HOWARD ZUCKER, as Commissioner of the New York State Department of Health,<br><br>Defendants. | **16-cv-00326 (CBA) (CLP)** |

**PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION IN CONNECTION WITH SETTLEMENT, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL, PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT STIPULATION, AND APPROVAL OF NOTICE TO CLASS MEMBERS**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND & PROCEDURAL HISTORY ........................................................ 4

           1.   *Caballero* Case Procedural and Factual Background ................... 4

           2.   *Bucceri* Case Procedural and Factual Background ....................... 5

ARGUMENT ................................................................................................................ 6

I.      PLAINTIFFS AND THE PROPOSED SETTLEMENT CLASS SATISFY THE PREREQUISITES OF RULE 23(a) .......................................................... 6

     A.   Legal Standard ................................................................................ 6

     B.   The Proposed Class Meets the Requirements of Rule 23(a) ...................... 6

           1.   The proposed settlement Class is sufficiently numerous ............... 7

           2.   The Class claims are based on common questions of law and fact ........................................................................ 7

           3.   The claims of the Named Plaintiffs are sufficiently typical of the claims of the proposed Class ................. 9

           4.   The proposed settlement Class is adequately represented ........... 11

II.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(2) ............................................................................ 12

     A.   Legal Standard ................................................................................ 12

     B.   Plaintiffs' Claims Satisfy the Requirements of Rule 23(b)(2) ................ 12

           1.   Plaintiffs' claims pertain to policies and practices that are class-wide in scope ................................................ 13

           2.   The relief sought by Plaintiffs is also class-wide in scope .......... 14

III.    THE PARTIES' PROPOSED STIPULATION OF SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ....................................................... 15

     A.   The Proposed Settlement Is Procedurally Fair, Reasonable, and Adequate, and Should Be Approved ......................................... 15

     B.   The Settlement Is Substantively Fair, Reasonable, and Adequate and Meets the *Grinnell* Standards for Class Action Settlement Approval ........................................................................ 17

           1.   The complexity, expense, and likely duration of the litigation support approval ......................................... 18

           2.   The reaction of the Class supports approval ................................ 18

3.      The stage of the proceedings and the amount of completed
        informal discovery support approval ............................................. 19

4.      The risks of establishing liability support approval ..................... 20

5.      The risks of maintaining the class action through the trial
        supports approval ......................................................................... 20

6.      Factors regarding class damages are inapplicable or support
        approval ........................................................................................ 21

IV.     PLAINTIFFS' PROPOSED FORM AND MECHANISM OF NOTICE
        SATISFY THE REQUIREMENTS OF RULE 23(e)(1) .................................... 23

V.      PLAINTIFFS RESPECTFULLY REQUEST THE OPPORTUNITY TO
        ADDRESS ANY OBJECTIONS FOLLOWING THE FAIRNESS
        HEARING .......................................................................................... 25

VI.     CONCLUSION ..................................................................................... 25

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page(s)**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013).................................................................................................................6

*Annunziato v. Collecto, Inc.*,
293 F.R.D. 329 (E.D.N.Y. 2013) .............................................................................6, 7, 8, 11, 12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................................ *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)........................................................................................................7

*Cortigiano v. Oceanview Manor Home for Adults*,
227 F.R.D. 194 (E.D.N.Y. 2005) ...........................................................................................14

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)................................................................................................16, 17

*D.D. v. N.Y. City Bd. of Educ.*,
No. Civ. A. CV 032489, 2004 WL 633222 (E.D.N.Y. Mar. 30, 2004), *vacated in part on other grounds*, 465 F.3d 503 (2d Cir. 2006), *op. amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007) .................................................................................................................................14, 15

*Davis v. Shah*,
821 F.3d 231 (2d Cir. 2016)......................................................................................................9

*Garcia v. Pancho Villa's of Huntingon Vill., Inc.*,
No. 09-CV-486, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012).........................................18, 20, 21

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)................................................................................................................10

*Gortat v. Capala Bros.*,
257 F.R.D. 353 (E.D.N.Y. 2009) ..............................................................................................6

*Handschu v. Special Servs. Div.*,
787 F.2d 828 (2d Cir. 1986)....................................................................................................24

*Henrietta D. v. Giuliani*,
No. 95 CV 0641 (SJ), 1996 WL 633382, at *15 (E.D.N.Y. Oct. 25, 1996) ...............................15

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)..........................................................................................15

*M.K.B. v. Eggleston*,
445 F. Supp. 2d. 400 (S.D.N.Y. 2006).............................................................................8

*Macedonia Church v. Lancaster Hotel, LP*,
No. 05-0153, 2011 WL 2360138 (D. Conn. June 9, 2011)...........................................29

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)...............................................................................6, 8, 10, 11

*In re Med. X-Ray Film Antitrust Litig.*,
No. CV 935904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ......................................20

*Verdow ex rel. Meyer v. Sutkowy*,
209 F.R.D. 309 (N.D.N.Y. 2002) .....................................................................................8

*In re Nassau Cty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) .............................................................................................7

*Nat'l Law Ctr. on Homelessness & Poverty, R.I. v. New York*,
224 F.R.D. 314 (E.D.N.Y. 2004) .............................................................................12, 15

*Nicholson v. Williams*,
205 F.R.D. 92 (E.D.N.Y. 2001) ...............................................................................12, 14

*Novella v. Westchester Cty.*,
661 F.3d 128 (2d Cir. 2011).............................................................................................7

*Olmstead v. L.C. ex rel. Zimring*,
527 U.S. 581 (1999)..........................................................................................................9

*Padro v. Astrue*,
No. 11-CV-1788, 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013)............................21, 23

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)...........................................................................................15

*Parker v. City of N.Y.*,
No. 15-cv-6733 (CLP), 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017)................ *passim*

*In re Playmobil Antitrust Litig.*,
35 F. Supp. 2d 231 (E.D.N.Y. 1998) ..............................................................................11

*Plummer v. Chem. Bank*,
668 F.2d 654 (2d Cir. 1982)...........................................................................................21

*Ramos v. SimplexGrinnell LP,*
796 F. Supp. 2d 346 (E.D.N.Y. 2011), *vacated in part on other grounds*, 773 F.3d 394 (2d Cir. 2014) ...........................................................................................................................8

*Rivera v. Harvest Bakery Inc.,*
312 F.R.D. 254 (E.D.N.Y. 2016) ....................................................................................10

*Robidoux v. Celani,*
987 F.2d 931 (2d Cir. 1993).............................................................................................10

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
659 F.3d 234 (2d Cir. 2011).............................................................................................10

*Shakhnes v. Berlin,*
689 F.3d 244 (2d Cir. 2012).............................................................................................14

*Spicer v. Pier Sixty LLC,*
269 F.R.D. 321 (S.D.N.Y. 2010) ......................................................................................8

*In re U.S. Foodservice Inc. Pricing Litig.,*
729 F.3d 108 (2d Cir. 2013)...............................................................................................6

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011).....................................................................................................12, 14

*Weil v. Long Island Sav. Bank,*
188 F. Supp. 2d 258 (E.D.N.Y. 2002) .............................................................................19

**Statutes**

29 U.S.C. § 794(a) ..............................................................................................................9

42 U.S.C. § 1396a ......................................................................................................8, 9, 13

42 U.S.C. §§ 12131–33 .......................................................................................................9

**Rules & Regulations**

28 C.F.R. § 35.130(d) ..........................................................................................................9

42 C.F.R. § 435.930 .............................................................................................................9

42 C.F.R. § 440.230(b) .........................................................................................................8

Fed. R. Civ. P. 23(a) ...................................................................................................1, 3, 6, 7

Fed. R. Civ. P. 23(b) .................................................................................................. *passim*

Fed. R. Civ. P. 23(e) .................................................................................................. *passim*

Fed. R. Civ. P. 23(g) ............................................................................................................3

**Other Authorities**

7B Charles A. Wright *et al.*, *Federal Practice and Procedure*, § 1797.6 (3d ed. 2013)...............24

**PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION IN CONNECTION WITH SETTLEMENT,
APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL,
PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT STIPULATION,
<u>AND APPROVAL OF NOTICE TO CLASS MEMBERS</u>**

Plaintiffs Olga Caballero; Michael Tong on behalf of Jie Du; Alejandra Negron; Iraida

Vasquez on behalf of Mariano Vazquez; Patricia Trujillo; and Betty Francisco on behalf of

Lourdes Lo (collectively, "Named Plaintiffs"), respectfully submit this memorandum in support

of the Named Plaintiffs' (collectively, the "Plaintiffs'") motion, pursuant to the Federal Rules of

Civil Procedure 23(a), (b)(2), (e), and (g).[1]

## PRELIMINARY STATEMENT

In this action, Named Plaintiffs, who are all recipients of Medicaid services through the

Healthfirst Defendants (collectively, "Healthfirst"), allege that Healthfirst unlawfully either (1)

reduced, or threatened to reduce, Named Plaintiffs' home healthcare services; or (2) denied, or

refused to consider, increases in Named Plaintiffs' home healthcare services; and (3) failed to

provide timely and adequate notices to Named Plaintiffs about the reduction or Denial[2] in

services, in violation of the Medicaid Act, the Americans with Disabilities Act ("ADA"), the

Rehabilitation Act ("Rehab Act"), the U.S. Constitution, and New York State laws.  Named

Plaintiffs also allege that Defendant Howard Zucker, as Commissioner of the New York State

Department of Health ("DOH"), knew of Healthfirst's systemic practices, and failed to

adequately supervise the administration of the plan.  All of the Defendants deny these allegations

and were prepared to defend the lawsuit.

---

[1] Defendants reviewed this Memorandum of Law prior to its filing.  They do not oppose this Motion.  This Memorandum of Law is filed in conjunction with *Bucceri v. Zucker, et al.*, 16 Civ. 8274 (S.D.N.Y. VSB), which is also a party to this settlement.  The parties in *Bucceri* have filed a consent motion for transfer to the E.D.N.Y. and will seek consolidation with the parties in this matter.  Should the cases not be consolidated, the parties will file these settlement materials in the transferred case.

[2] All capitalized terms not otherwise defined in this motion have the same meanings ascribed to them in the Settlement Stipulation.

The Parties have agreed upon a Stipulation of Settlement ("Settlement Stipulation") to resolve these actions, conditioned on certification of a class under Rule 23(b)(2).  The proposed class is defined as all current and future Medicaid recipients who receive Home Care Services through Healthfirst Defendants (the "Class").  Named Plaintiffs and their counsel believe that the settlement set forth in the Parties' Settlement Stipulation is fair, reasonable, adequate, and in the best interests of the Named Plaintiffs and the members of the proposed Class, and that it confers substantial benefits upon the Named Plaintiffs and the members of the Class.  Briefly, the terms of the settlement include the following:

1. Healthfirst will not reduce, or threaten to reduce, any member's Home Care Services based on a prior mistake (unless there is evidence of a specific factual or clerical error) or based on an eight-hour cap on some services.  *See* Settlement Stipulation at 7.  Healthfirst will comply with DOH guidance issued in November 2016 concerning what a notice of reduction must state, and the methods Healthfirst must use to determine members' needs.  *See id.* at 7–10.

2. When completing an assessment of members' Home Care Service needs in response to a request for an increase in Home Care Services, Healthfirst will comply with certain guidance issued by DOH requiring that (a) members' plan of care list the days and times home health attendants and informal caregivers are expected to be with members; (b) Healthfirst use reasonable efforts to provide additional support if members notify Healthfirst that an informal caregiver will not be available during a scheduled time; and (c) the schedule of Home Care Service hours and other services adequately meet members' scheduled and unscheduled needs.  *See id.*

3. Any Healthfirst member who received a notice of reduction between January 1, 2015 and May 11, 2018, but did not request a Fair Hearing that resulted in a decision or agree to a settlement with Healthfirst, will receive a letter stating that he or she may request a Fair Hearing to challenge his or her old reduction in Home Care Service hours, provided he or she is still receiving a reduced amount of Home Care Services hours.  *See id.* at 11–12.

4. Healthfirst will have a process for tracking members' requests for increase in Home Care Services.  *Id.* at 10.

5. When completing an assessment in response to a member's request for an increase in services, Healthfirst will document the day(s) and time(s) that formal supports and voluntary care from Informal Supports are expected to be provided, taking into account any known variability in the day(s) and time(s) of services provided by formal or Informal Supports, as well as the type and scope of services they will

provide. If Healthfirst is notified that an Informal Support will not be able to assist a member at the scheduled time(s), Healthfirst will use reasonable efforts to cover those hours and/or tasks taking into account the amount of notice and the availability of additional service providers. *Id*. at 10–11.

6. Healthfirst will not deny a request a member makes for an increase in Home Care Services solely on the basis that the request was made during any period where the member requested a Fair Hearing but has not received a decision. Healthfirst will not use the hours to which the member has previously stipulated as the sole reason to deny a member's request for an increase in services. *Id*. at 10–11.

7. DOH agrees to send an email to all Partial Capitation and Medicaid Advantage Plan ("MAP") plans reminding them of their obligations under applicable laws and regulations. *See id.* at 13.

8. DOH will conduct a training for Partial Capitation and MAP plans on the standards and informational requirements related to reductions in Home Care Services, denials of requests for increases in Home Care Services, and notices for such reductions and denials. *Id.* at 15.

Accordingly, Plaintiffs hereby move this Court for the entry of an Order as follows:

1. Certifying the action as a class action on behalf of members of the class pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure solely for the purposes of the settlement set forth in the Parties' Settlement Stipulation and for no other purpose;

2. Appointing the proposed Class Representatives as representatives of the Class;

3. Appointing New York Legal Assistance Group ("NYLAG"), The Legal Aid Society, Winston & Strawn LLP, and Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") as counsel for the Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

4. Preliminarily approving the settlement set forth in the Parties' Settlement Stipulation, as fair, reasonable, adequate, and in the best interests of the Named Plaintiffs and members of the Class, subject to further consideration at a Fairness Hearing; and

5. Approving the proposed Class Notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; and

6. Scheduling a Fairness Hearing at a date to be set by the Court.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### 1.    *Caballero* Case Procedural and Factual Background

The *Caballero* Named Plaintiffs are Olga Caballero; Jie Du, by her next friend Michael

Tong; Alejandra Negron; Mariano Vazquez, by his next friend Iraida Vasquez; and Juan Santos,

by his next friend Rita Baez.[3]  Though varying in age and disability, it is alleged that each of

them had their Home Care Services unlawfully reduced without adequate notice by Healthfirst.

For example, Ms. Caballero received a notice stating that Healthfirst CompleteCare would

reduce her Home Care Services by over 77 percent to eight hours per week.  Am. Compl. ¶ 27,

Dkt. 29, *Caballero v. Zucker*, 1:16-cv-00326-CBA-CLP (E.D.N.Y. Jan. 21, 2016) ("*Caballero*

Complaint").  The *Caballero* Complaint alleges that the notice to Ms. Caballero contained

numerous incorrect statements or omissions, including not only false factual allegations and

misleading references to regulations, but also a lack of information needed to provide Ms.

Caballero with a meaningful basis on which to decide whether to ask for a Fair Hearing or the

information needed to defend against the proposed reduction at a Fair Hearing.  *Id.* at ¶¶ 27–31.

*Caballero*'s Named Plaintiffs allege that Defendants maintained a pattern and practice of

reducing or threatening to reduce, or allowing reductions of their necessary care without the

timely and adequate notice required by law, and basing these reductions on unlawful and

arbitrary limits on care.  *Id.* at ¶ 1.

Following the initial filing of the *Caballero* Complaint, the Parties held extensive

settlement negotiations, facilitated by Magistrate Judge Pollak.  In addition to many settlement

conferences, counsel for the Parties met in person and conferred by telephone and email on

---

[3] Mr. Santos passed away, and a Suggestion of Death was filed on the record on December 5, 2017.  While the Named Plaintiffs include all Plaintiffs listed in the caption, Plaintiffs' counsel only propose those who are not deceased as class representatives.

numerous occasions.  These extensive negotiations culminated in the Parties' proposed

Settlement Stipulation, which has been submitted to the Court in connection with this Motion.

2.    <strong><em>Bucceri</em> Case Procedural and Factual Background</strong>

The *Bucceri* Named Plaintiffs are Madeline Bucceri, Patricia Trujillo, and Betty

Francisco on behalf of Lourdes Lo.[4]  Although they differ in age and disability, each was

allegedly denied medically necessary Home Care Service hours by Healthfirst.  For example, on

numerous occasions, Ms. Trujillo requested an increase in her home care hours so as to obtain

medically necessary home care seven days a week, but was denied by Healthfirst CompleteCare

based on the alleged incorrect premises that a family member was providing informal care for

her on the weekends and that she could not request an increase while a Fair Hearing decision was

pending.  Compl. ¶ 1, Dkt. No. 1, *Bucceri v. Zucker*, 1:16-cv-08274-VSB (S.D.N.Y. 2016)

("*Bucceri* Complaint").  The *Bucceri* Named Plaintiffs allege that Healthfirst, under the auspices

of DOH, engaged in a pattern and practice of improperly denying requests made by Medicaid-

managed care members for increased hours of medically necessary Home Care Services.

*Bucceri* Compl. ¶ 150; Garcia Decl. ¶¶ 22, 35.

At the direction of the Honorable Vernon S. Broderick (S.D.N.Y.), the *Bucceri* Plaintiffs

joined ongoing settlement negotiations between the *Caballero* Plaintiffs, DOH, and Healthfirst.

*See* Ltr. to Hon. Vernon S. Broderick, Dkt. No. 40, *Bucceri v. Zucker*, 1:16-cv-08274-VSB

(S.D.N.Y. 2016).  The Plaintiffs ultimately were successful in integrating *Bucceri*'s claims of

improperly denied home care increases into the resolution of *Caballero*'s claims concerning

improper reductions.

---

[4] Ms. Bucceri passed away on December 16, 2017, and a Suggestion of Death was filed on the record.

**ARGUMENT**

I.    **PLAINTIFFS AND THE PROPOSED SETTLEMENT CLASS SATISFY THE PREREQUISITES OF RULE 23(a)**

    A.    **Legal Standard**

A class should be certified under Rule 23 if Plaintiffs meet the requirements set forth in Rule 23(a) and the action is one of three types enumerated in Rule 23(b).  *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013); *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 334 (E.D.N.Y. 2013).  Courts must perform a "rigorous analysis" when determining whether class certification is warranted, *see, e.g.*, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013); *Annunziato*, 293 F.R.D. at 334, and the party seeking certification must establish by a preponderance of the evidence that each requirement of Rule 23 has been met.  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 117.  However, courts "must still take a liberal rather than a restrictive approach in determining whether [plaintiffs] satisf[y] Rule 23's requirements and may exercise broad discretion when determining whether to certify a class."  *Annunziato*, 293 F.R.D. at 334; *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).

    B.    **The Proposed Class Meets the Requirements of Rule 23(a)**

A proposed class meets the requirements for certification under Rule 23 if it satisfies each of the following four factors: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The proposed settlement Class satisfies all four prerequisites here.

### 1.    The proposed settlement Class is sufficiently numerous

The proposed settlement Class easily meets the "numerosity" requirement that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Novella v. Westchester Cty.*, 661 F.3d 128, 143 (2d Cir. 2011). The U.S. Court of Appeals for the Second Circuit does not apply a strict numerosity rule, and evidence of the exact size of a class is not required. *See Annunziato*, 293 F.R.D. at 335–36 (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). The Second Circuit has suggested, however, that a class may be presumed sufficiently numerous at a number as low as 40 class members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the proposed settlement Class consists of low-income and severely disabled individuals who currently (or in the future will) receive Home Care Services from one of the Healthfirst MLTC Plans. As of December 2017, there were approximately 14,500 Medicaid recipients enrolled in Healthfirst MLTC Plans.[5] Although the exact number of Class members is not yet known, this estimated population easily surpasses the low threshold the Second Circuit has set. Even if Plaintiffs were not disabled, joining thousands of individual putative Class member cases would be impractical, if not impossible. Because all members of the proposed settlement Class have severe disabilities and limited financial means, the idea that each could pursue individual suits is fanciful.

### 2.    The Class claims are based on common questions of law and fact

"[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). Courts within

---

[5] *See Recipients Enrolled in Mainstream Medicaid Managed Care by County, Plan, Aid Category, and NYSoH 30*, NEW YORK STATE DEPT. OF HEALTH, *available at* https://www.health.ny.gov/health_care/managed_care/reports/enrollment/monthly/2017/docs/en12_17.pdf (last visited March 13, 2018).

the Second Circuit find commonality where plaintiffs' alleged injury derives from a unitary course of conduct by defendants. *See, e.g.*, *Marisol A.*, 126 F.3d at 377; *Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 354 (E.D.N.Y. 2011) (finding commonality requirement satisfied where plaintiffs alleged that challenged procedures were "centralized"), *vacated in part on other grounds*, 773 F.3d 394 (2d Cir. 2014); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (commonality prong met where each class member's wage and hour claims arose from a "single system"); *M.K.B. v. Eggleston*, 445 F. Supp. 2d. 400, 441 (S.D.N.Y. 2006) (finding common questions of law and fact where plaintiffs alleged that systemic errors by city and state officials led to denial of public assistance, Medicaid, and food stamps); *Verdow ex rel. Meyer v. Sutkowy*, 209 F.R.D. 309, 312 (N.D.N.Y. 2002) (commonality met where plaintiffs claimed state and county officials were violating federal law by denying Medicaid eligibility for beneficiaries of certain trusts). The factual circumstances underlying a group of plaintiffs' allegations need not be identical for a finding of commonality to be made, for the "individual circumstances of the class members can differ without precluding class certification, so long as the common questions are at the core of the cause of action alleged." *Annunziato*, 293 F.R.D. at 336 (internal quotation marks omitted).

The Class claims here raise significant, common questions about whether Healthfirst's reductions in home care hours are properly determined; whether Healthfirst's reductions were preceded by timely and adequate notice; and whether Healthfirst's denials of increases are properly issued and, if not, whether these practices have been systematically leaving Class members with inadequate home care in violation of their rights under the Medicaid Act,[6] the

---

[6] Under the "availability requirement" of the Medicaid Act, Plaintiffs and proposed class members are entitled to medically necessary Home Care Services in "sufficient amount, duration, and scope" to achieve the services' purpose: to allow disabled individuals to remain in their homes (as opposed to being institutionalized) without jeopardizing their health and safety. 42 U.S.C. 1396a(a)(10)(A); *see also* 42 C.F.R. § 440.230(b). The

ADA, the Rehab Act,[7] federal and state due process clauses, New York Social Services laws, and the New York City Human Rights Law. These overarching common questions implicate common sub-questions, including whether the assessment system used to allocate home care hours is sufficient to provide adequate, medically necessary care; whether Healthfirst is properly identifying and accounting for informal care; and whether Healthfirst is accounting for span of time tasks and needs that cannot be scheduled.

Likewise, Plaintiffs' claims assert that DOH retains an obligation to ensure that these services are provided by Healthfirst in compliance with applicable laws, as Healthfirst acts as an agent of DOH in its provision of Home Care Services to its Medicaid-funded members. As Plaintiffs allege, a common question exists as to whether DOH has met its obligations to ensure that Healthfirst's provision of Home Care Services is adequate under governing law. A failure by DOH in overseeing Healthfirst's managed care plans can impact all enrollees by subjecting them to a system with insufficient safeguards to ensure due process and compliance with applicable federal and state requirements.

### 3.     The claims of the Named Plaintiffs are sufficiently typical of the claims of the proposed Class

Typicality is established "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's

---

Medicaid Act specifically requires that State plans operating under its authority comply with this standard. 42 U.S.C. §1396a(a)(10)(A). Further, the reasonable promptness requirement of the Medicaid Act mandates that all medically necessary, covered services, including home care, "be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8); *see also* 42 C.F.R. § 435.930 (applying requirement to State plans).

[7] The ADA and the Rehab Act prohibit discrimination against disabled individuals who receive state-administered or state-funded services. *See* 42 U.S.C. §§ 12131–33 (ADA); 29 U.S.C. § 794(a) (Rehab Act). These Acts operate on the State and its delegates pursuant to an "integration mandate" requiring public entities providing programs or services to disabled persons "in the most integrated setting appropriate" to the individual and the circumstances. 28 C.F.R. § 35.130(d); *see Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 599–600 (1999); *Davis v. Shah*, 821 F.3d 231, 265 (2d Cir. 2016). The Second Circuit has interpreted this mandate to "require[] a state to provide community-based treatment" for persons with disabilities where it can be reasonably accommodated. *Davis*, 821 F.3d at 262.

liability." *Robidoux*, 987 F.2d at 936; *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). "[T]he existence of a common policy suggests that the named representatives and the class members suffered similar injuries as a result of the same policy and therefore, their claims are typical." *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 272 (E.D.N.Y. 2016). Although commonality and typicality are two separate criteria, they "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Both reflect the goal of judicial economy, and focus on "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*; *see also Marisol A.*, 126 F.3d at 376.

Here, the proposed settlement Class satisfies typicality because the harm Named Plaintiffs have alleged, and which they seek to redress, is representative of the treatment Class members have experienced—or, absent court intervention, have been at imminent risk of experiencing: an inability to maintain and secure desperately needed Home Care Services because of inadequate and legally insufficient procedures, described above. The individual claims of the Named Plaintiffs are typical of the Class because they each allege violations of the Medicaid Act, the ADA, the Rehab Act, the Due Process Clauses of the New York Constitution and the Fourteenth Amendment to the U.S. Constitution, and various New York state social services and human rights statutes. More specifically:

- All Named Plaintiffs allege that they suffered either reductions or denied increase requests, resulting from issues including inadequate notice, failure to record requests for increased hours, false or incorrect information regarding Informal Supports, and/or faulty or deficient evaluation procedures, depriving them of sufficient medically necessary home cares services. *See generally* Garcia, Stevens and Eulin Decls.;

- Named Plaintiffs allege that Defendants either placed them at risk of having to move to the more restrictive setting of nursing homes, rather than remaining in

their own homes, or placed them at risk of harm by reducing their care.  Garcia
Decl. ¶ 37; Stevens Decl. ¶¶ 14–76;

- All Named Plaintiffs allege that DOH failed to adequately supervise or monitor
  the provision of Home Care Services by the Healthfirst MLTC plans to ensure
  compliance with federal and state requirements; and

- All Named Plaintiffs claims allege that Healthfirst MLTC plans did not initially
  consider whether each Named Plaintiff was entitled to span-of-time Home Care
  Services.  Garcia Decl. ¶¶ 20, 25, 32; Stevens Decl. ¶ 10.

### 4.    The proposed settlement Class is adequately represented

The adequacy requirement of Rule 23 is met if (1) "there is no conflict of interest

between the named plaintiffs and other members of the plaintiff class" and (2) "class counsel is

qualified, experienced, and generally able to conduct the litigation."  *Marisol A.*, 126 F.3d at 378

(internal quotation marks and citation omitted).  "One court has summarized the adequacy

requirement thusly: 'Absent any conflict between the interests of the representatives and other

[proposed class members], and absent any indication that the representative will not aggressively

conduct the litigation, fair and adequate protection of the class may be assumed.'"  *In re*

*Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 243 (E.D.N.Y. 1998) (internal citation omitted).

Courts have generally found that where, as here, the claims of named plaintiffs are typical of

those of the proposed class, there is strong evidence that no conflict of interest will exist, as the

similarity in claims gives rise to an alignment of interests between named plaintiffs and putative

class members.  *See Annunziato*, 293 F.R.D. at 339.

The proposed Class will also be served by several teams of competent counsel.  The

breadth and depth of experience amongst Plaintiffs' counsel[8] ensure that they will adequately

represent the interests of the proposed settlement Class.  Moreover, proposed Class Counsel from

The Legal Aid Society and NYLAG have significant and extensive experience representing

---

[8] Proposed Class counsel consists of attorneys from The Legal Aid Society, NYLAG, Winston & Strawn LLP, and
Paul, Weiss.

Medicaid recipients with disabilities in New York City.  Garcia Decl. ¶¶ 11, 13; Stevens Decl. ¶ 5.  Collectively, Plaintiffs' counsel are well-equipped to provide dedicated, experienced, and qualified attorneys to adequately represent the class through the close of this action.

## II.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b)(2)

### A.    Legal Standard

Class certification under Rule 23(b)(2) is appropriate where Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as whole."  Fed. R. Civ. P. 23(b)(2); *accord Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (certification pursuant to 23(b)(2) is appropriate where the nature of the remedy is indivisible, *i.e.*, "it can be enjoined or declared unlawful only as to all of the class members or as to none of them").

This Court routinely certifies (b)(2) classes, particularly when injunctive relief is sought to effect systemic change or institutional reform.  *See, e.g.*, *Nat'l Law Ctr. on Homelessness & Poverty, R.I. v. New York*, 224 F.R.D. 314, 326 (E.D.N.Y. 2004) ("In so far as the Plaintiffs ask for injunctive relief and predicate the lawsuit on the Defendants, the requirements of Rule 23(b)(2) are satisfied."); *Nicholson v. Williams*, 205 F.R.D. 92, 99 (E.D.N.Y. 2001).

### B.    Plaintiffs' Claims Satisfy the Requirements of Rule 23(b)(2)

Named Plaintiffs seek injunctive relief under Rule 23(b)(2) to address Healthfirst's alleged practices of reducing, and denying requests for increases in, home care hours, as well as to address DOH's alleged failure to protect Plaintiffs' statutory and constitutional rights.  Each of these alleged practices applies generally to Named Plaintiffs and the entire proposed settlement Class.  The binding terms of the Parties' Settlement Stipulation, which the Parties agree shall apply to all current and future Healthfirst members who receive Medicaid-funded Home Care Services, will resolve Plaintiffs' claims with respect to the Class as a whole.

### 1.    Plaintiffs' claims pertain to policies and practices that are class-wide in scope

Plaintiffs' allegations pertaining to policies and practices employed by Healthfirst and DOH apply to all Class members.  Some of these alleged practices include Healthfirst's reduction of home care hours or denial of increases in home care hours without a proper assessment of Plaintiffs' medical needs and/or without timely notice or an adequate opportunity to challenge these determinations at Fair Hearings before DOH, and DOH's failure to adequately monitor these practices, allowing them to continue.  *See, e.g.*, Garcia Decl. ¶¶ 26, 28 (Healthfirst provided Ms. Trujillo with no services on the weekends based on an unverified and incorrect assumption that she had informal care); Stevens Decl. ¶¶ 14–27 (Ms. Caballero received a notice stating that Healthfirst Defendants would reduce her Home Care Services, but the notice contained numerous deficiencies and moreover failed to give Ms. Caballero a meaningful basis on which to decide whether to ask for a Fair Hearing or the information needed to defend against the proposed reduction at a Fair Hearing.)  Other alleged practices include DOH's delegation of its authority to administer New York's Medicaid program to Healthfirst, despite its continuing obligation to monitor Healthfirst and ensure that Healthfirst and other managed care plans adhere to policies and procedures which comply with applicable laws, including the availability and reasonable promptness requirements of the Medicaid Act, the antidiscrimination mandates of the ADA and the Rehab Act, federal and state due process protections, New York's Social Services Law, the New York City Human Rights Law, and all applicable implementing regulations.  The State must also "provide such safeguards as may be necessary to assure" that Home Care Services are provided "in a manner consistent with simplicity of administration and the best interests of the recipients."  42 U.S.C. § 1396a(a)(19).

Courts within the Second Circuit have consistently held that (b)(2) certification is appropriate for class claims alleging violations of the Medicaid Act, the ADA, and the Rehab Act. *See, e.g.*, *Shakhnes v. Berlin*, 689 F.3d 244, 262–63 (2d Cir. 2012) (affirming (b)(2) class consisting of "persons who, at a minimum[,] are Medicaid enrollees") (internal quotation marks omitted); *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 208 (E.D.N.Y. 2005) (certifying ADA and Rehab Act claims of mentally disabled residents of adult care facility). As detailed herein, Defendants' practices giving rise to these alleged violations are institutional in nature; accordingly, Named Plaintiffs and each putative Class member are uniformly subject to them. *See Nicholson*, 205 F.R.D. at 99. As the conduct Plaintiffs seek to enjoin is generally applicable to all proposed class members, Rule 23(b)(2) is an appropriate mechanism for certification. *See* Fed. R. Civ. P. 23(b)(2).

Plaintiffs' claims seek to ensure that DOH does not abdicate its obligation to adequately monitor Healthfirst's provision of Home Care Services, specifically with respect to its processes for issuing denials of increases of Home Care Services hours. The approach DOH takes to this monitoring requirement "can be enjoined or declared unlawful only as to all of the class members or as to none of them," and thus is the type of conduct befitting of certification under Rule 23(b)(2). *See Dukes*, 564 U.S. at 360.

### 2. The relief sought by Plaintiffs is also class-wide in scope

"Rule 23(b)(2) is designed to assist litigants seeking institutional change[.]" *Nicholson*, 205 F.R.D. at 99. The Rule specifically contemplates application to "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class," *see* Fed. R. Civ. P. 23 advisory committee note (1996), and it is singularly suited for plaintiffs seeking injunctive relief from alleged deficiencies in the administration of federally mandated programs. *See, e.g.*, *D.D. v. N.Y. City Bd. of Educ.*, No. Civ. A. CV 032489, 2004 WL 633222, at *13 (E.D.N.Y.

Mar. 30, 2004), *vacated in part on other grounds*, 465 F.3d 503 (2d Cir. 2006), *op. amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007); *Nat'l Law Ctr.*, 224 F.R.D. at 325; *Henrietta D. v. Giuliani*, No. 95 CV 0641 (SJ), 1996 WL 633382, at *15 (E.D.N.Y. Oct. 25, 1996).

Through the Settlement Stipulation, Defendants have committed to undertake certain obligations applicable to the entire proposed settlement Class that Plaintiffs believe will address the issues asserted in Plaintiffs' claims. Plaintiffs believe that these efforts will improve procedures for assessing home care needs and for providing sufficient services to all Class members in a reasonably prompt manner, limiting unnecessary segregation of Class members from their communities and further supporting Rule 23(b)(2) certification here.

## III. THE PARTIES' PROPOSED STIPULATION OF SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial policy favors settling class actions. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *see Parker v. City of New York*, No. 15-cv-6733 (CLP), 2017 WL 6375736, at *4 (E.D.N.Y. Dec. 11, 2017). To grant preliminary approval of a class settlement under Rule 23(e), a court must ultimately determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000); *see* Fed. R. Civ. P. 23(e). A court need only find that there is probable cause to submit the settlement to the class members and to hold a Fairness Hearing. *Parker*, 2017 WL 6375736, at *4. Here, the proposed settlement is both procedurally and substantively fair, reasonable, and adequate and should therefore be preliminarily approved.

### A. The Proposed Settlement Is Procedurally Fair, Reasonable, and Adequate, and Should Be Approved

In examining procedural fairness, a court must ensure that "the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."

15

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (internal quotation marks and citation omitted). The Parties, through their experienced and competent counsel, engaged in arm's-length negotiations for many months in order to reach the final proposed settlement terms that are contained in the Settlement Stipulation filed today. The proposed settlement is therefore procedurally fair, reasonable, and adequate, and should be approved.

The heart of the settlement negotiations in this case spanned an intense period extending from September 2016 through April 2018, and involved thousands of hours of work by counsel for all Parties and required difficult concessions and compromises on both sides. Importantly, the negotiations produced numerous commitments by Defendants and revisions to Defendants' policies and Healthfirst's systems that will enhance the provision of Home Care Services. *See* Garcia Decl. ¶¶ 39–42; Stevens Decl. ¶ 85; *see also generally* Settlement Stipulation. The hard-fought negotiations were conducted by experienced and capable attorneys practiced in class-action litigation. *See* Garcia Decl. ¶¶ 11–12; Stevens Decl. ¶¶ 5–6.

Plaintiffs' counsel negotiating the settlement had intimate knowledge of both the facts and law involved in this case as the result of prior experience in this field, substantive informal discovery, and extensive time devoted to the settlement negotiations. In addition, both Defendants' counsel are well-versed in the intricacies and complexities of the health care plans at issue and ably represented their clients' interests throughout the course of the case.

Finally, at all times during this settlement process, the Parties have negotiated at an arm's-length basis, attending numerous settlement conferences before this Court and meetings in an effort to reach a settlement. *See Parker*, 2017 WL 6375736, at *5. The process of reaching the proposed settlement in this case was procedurally fair.

16

**B.    The Settlement Is Substantively Fair, Reasonable, and Adequate and Meets the *Grinnell* Standards for Class Action Settlement Approval**

Courts evaluate the settlement terms within the framework of the factors set forth in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000), to determine if the terms are fair, adequate, and reasonable.  *See D'Amato*, 236 F.3d at 86.  These *Grinnell* factors include:

> (1) the complexity, expense, and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell Corp.*, 495 F.2d at 463.

A court should not apply the factors in a formulaic manner, but rather "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice."  *Grinnell Corp.*, 495 F.2d at 468.  Although the Court is not required at this time to make a finding of fairness as to the underlying settlement for preliminary approval purposes, courts have still considered the *Grinnell* factors in determining whether to grant preliminary approval of a settlement.  *See Parker*, 2017 WL 6375736, at *5.

All of the relevant *Grinnell* factors support preliminary approval of the proposed settlement in this case, thereby satisfying Rule 23(e)'s requirements of substantive fairness, reasonableness, and adequacy.

### 1. The complexity, expense, and likely duration of the litigation support approval

The complexity of this litigation is evident in the breadth of the factual and legal claims and the number of Parties involved. In particular, Named Plaintiffs, on behalf of many Class members, allege numerous causes of action based on both state and federal statutory and constitutional violations against each of the Defendants. *See Caballero* Am. Compl. ¶¶ 317–20; *Bucceri* Compl. ¶¶ 194–229. Continued litigation would require extensive additional discovery, including multiple depositions of Defendants' employees, the Named Plaintiffs, and various Class members, in addition to more document discovery related to the development of—and justification for—cancellation or reduction in home healthcare services. There would likely also be extensive motion practice involving complex constitutional and statutory issues pertaining to allegations relating to services provided by Medicaid, a vast federal-state program that requires adherence to a comprehensive list of requirements and regulations for administrators. If motion practice did not resolve the case, a trial in this matter would be fact-intensive and lengthy for all Parties involved, and any judgment likely would be appealed, further delaying resolution. *See Parker*, 2017 WL 6375736, at \*5. The complexity, expense, and likely duration of the litigation weigh heavily in favor of the settlement's approval. *See Garcia v. Pancho Villa's of Huntingon Vill., Inc.*, No. 09-CV-486, 2012 WL 5305694, at \*4 (E.D.N.Y. Oct. 4, 2012).

### 2. The reaction of the Class supports approval

The Parties are not able to evaluate the reaction of the Class members to the proposed settlement because the notice of the proposed settlement has not yet been distributed. Moreover, the time for objections has not yet passed. Thus, this *Grinnell* factor should be neutral. *See Parker*, 2017 WL 6375736, at \*6.

### 3. The stage of the proceedings and the amount of completed informal discovery support approval

Although there have not been any dispositive motions in this case so far, informal discovery for the purposes of settlement has already been exchanged. *See* Garcia Decl. ¶ 40; Stevens Decl. ¶ 82; (*see also* Dkt. Nos. 50, 53, 65). The thousands of pages of documents NYLAG reviewed included information from DOH's audit of Healthfirst. *See* Stevens Decl. ¶ 8. As part of the informal discovery, DOH produced ninety individual case files, each forty to fifty pages long. *See* Stevens Decl. ¶ 82. The documents also included DOH's evaluation of Healthfirst, which was helpful for Plaintiffs in evaluating their cases' strengths and weaknesses. *See id.* This information allowed Plaintiffs to make "an educated evaluation of the relative strengths and weaknesses of the parties' cases," and they were "in a position to make informed settlement judgments." *Weil v. Long Island Sav. Bank*, 188 F. Supp. 2d 258, 263–64 (E.D.N.Y. 2002).

Indeed, apart from the discovery that was exchanged, *Caballero* counsel from NYLAG had already independently reviewed in detail over one thousand Fair Hearing decisions that specifically concerned Healthfirst enrollees challenging a reduction in home healthcare. Moreover, NYLAG represented an additional thirty Healthfirst enrollees in Fair Hearings regarding home healthcare reductions between July 2015 and September 2016. Similarly, *Bucceri* counsel from The Legal Aid Society independently reviewed 135 past Fair Hearing decisions that specifically concerned Healthfirst enrollees challenging a denial of increased home care hours. Garcia Decl. ¶ 16. Legal Aid counsel also assisted 36 Healthfirst enrollees with requests for increases between July 2015 and September 2016. Garcia Decl. ¶ 14. Plaintiffs' counsel therefore was able to rely on its significant experience litigating these kinds of cases to conduct a vigorous investigation of Healthfirst's conduct even prior to filing either Complaint.

"When discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored." *Parker*, 2017 WL 6375736, at *6; *see Garcia*, 2012 WL 5305694, at *4.

The prolonged negotiations, the breadth of the thousands of pages of discovery material exchanged between the *Caballero* counsel and DOH, the scores of additional documents reviewed, and the Parties' demonstrated understanding and use of that material throughout this litigation suggest that all Parties know well the strengths and weaknesses of their respective positions in this case. *See Parker*, 2017 WL 6375736, at *6. This *Grinnell* factor therefore supports approval of the proposed settlement. *See Garcia*, 2012 WL 5305694, at *4.

### 4.    The risks of establishing liability support approval

While Plaintiffs are confident in the merits of their claims, there is no certainty that they would prevail at a trial. Nor is there any certainty that Defendants would prevail at trial if they were to raise the defenses discussed during settlement negotiations. When determining whether a settlement is adequate, "a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Med. X-Ray Film Antitrust Litig.*, No. CV 935904, 1998 WL 661515, at *4 (E.D.N.Y. Aug. 7, 1998) (internal citations omitted). The uncertain outcome of this matter at trial counsels in favor of approving the proposed settlement. *See Garcia*, 2012 WL 5305694, at *5.

### 5.    The risks of maintaining the class action through the trial supports approval

A risk that a class will be decertified during litigation weighs in favor of approving a settlement. That risk exists here.

This Court has not yet certified a class action in this matter. If Plaintiffs were to move for class certification, Defendants could oppose the motion and/or move for decertification at the

end of trial or on appeal, a process that would require additional discovery and extensive briefing

by all Parties.  These risks—no matter how minimal—are present compared to the certainty of all

Class members benefiting from the remedies agreed to in the Settlement Stipulation.  *See*

*generally* Settlement Stipulation.  The risks of maintaining the class therefore weigh in favor of

approving the settlement, as it would eliminate "risk, expense, and delay."  *Garcia*, 2012 WL

5305694, at *5.  The sixth *Grinnell* factor thus also favors final approval.  *See Parker*, 2017 WL

6375736, at *6.

**6.    Factors regarding class damages are inapplicable or support approval**

If this Court decides to consider the remaining *Grinnell* factors—the risks of establishing

damages; the ability of Defendants to withstand a greater judgment; the range of reasonableness

of the settlement fund in light of the best possible recovery; and the range of reasonableness of

the settlement fund to a possible recovery in light of all the attendant risks of litigation—in

evaluating the overall reasonableness of the proposed settlement terms, they, too, will weigh in

favor of approving the settlement.  *See Padro v. Astrue*, No. 11-CV-1788, 2013 WL 5719076, at

*7 (E.D.N.Y. Oct. 18, 2013) (considering these factors and granting final approval in an

injunctive case where "[t]he settlement offers the class members the most important, most

tangible form of relief sought by plaintiffs"); *see also Plummer v. Chem. Bank*, 668 F.2d 654,

660 (2d Cir. 1982).

In the Plaintiffs' respective Complaints, they requested relief enjoining:

(a) Healthfirst from threatening to reduce, or actually reducing, Home Care Services
without first providing timely and adequate notice;
(b) Healthfirst from threatening to reduce or actually reducing Home Care Services based
on arbitrary limits to care;
(c) Healthfirst to provide a new notice, and DOH to provide a new opportunity for a Fair
Hearing, to any class member whose Home Care Services were actually reduced after
January 1, 2015 due to an alleged prior mistake, where the reduction was not affirmed
in a decision after Fair Hearing;

>       (d) DOH to ensure that Healthfirst provides timely and adequate notice when threatening
>           to reduce or reducing Home Care Services; and
>
>       (e) DOH to ensure that Healthfirst does not threaten to reduce or actually reduce
>           Plaintiffs' Home Care Services based on arbitrary limits on care,

*Caballero* Am. Compl., at 58, as well as relief enjoining:

>       (a) Healthfirst to accept, record, and timely process all requests for increases in home
>           care hours and to provide written notification to Plaintiffs describing the actions taken
>           on such requests and notifying Plaintiffs of rights to appeal such actions;
>
>       (b)  Defendants from refusing to provide sufficient and medically necessary Home Care
>           Services to Plaintiffs;
>
>       (c)  DOH to monitor and supervise the Healthfirst plans and to ensure Healthfirst's
>           compliance with relevant federal and state constitutions, laws, and regulations;
>
>       (d) DOH to retrain the Healthfirst plans' staff and to ensure Healthfirst's compliance with
>           relevant federal and state constitutions, laws, and regulations in the provision of
>           Home Care Services to class members; and
>
>       (e) Defendants to ensure that the Healthfirst plans provide Plaintiffs with the medically
>           necessary Home Care Services requested.

*Bucceri* Compl., at 49–50.

The Settlement Stipulation achieves much of the requested relief. *See generally*

Settlement Stipulation. In terms of practices and policies relating to Home Care Services, the

Parties agreed on substantial improvements. For example, Healthfirst will not reduce, or threaten

to reduce, any member's care based on a prior mistake (unless there is evidence of a specific

factual or clerical error) or based on an eight-hour cap on some services. *See id.* at 7. Healthfirst

will comply with DOH guidance issued in November 2016 concerning what a notice of reduction

must state, and the methods Healthfirst must use to determine its members' needs. *See id.* at 7–

9. Finally, DOH has issued two policies that provide guidance that MLTC Plans must follow

before they can reduce home care hours. *See id.* at 13–17. Such guidance clarifies what a notice

of reduction has to say and when it is appropriate to reduce hours. *See id.*

The Settlement Stipulation provides for additional relief. Specifically, any Healthfirst

member who received a notice of reduction between January 1, 2015 and May 11, 2018, but did

not request a Fair Hearing that resulted in a decision or agree to a settlement with Healthfirst, will receive a letter stating that he or she may request a Fair Hearing to challenge his or her old reduction in home care service hours, provided he or she is still receiving a reduced amount of Home Care Services hours. *See id.* at 11–12.

Under the Settlement Stipulation, DOH also agrees to send an email to all Partial Capitation and MAP plans reminding them that: (1) a member's plan of care must address all of that member's scheduled and unscheduled needs; (2) each member should receive a copy of their PCSP, and that the PCSP should contain basic information about the member's assessed needs and whether those needs can be scheduled in advance for particular times of the day; and (3) if certain needs cannot be scheduled in advance, the PCSP should identify the days and hours when those needs may occur and how they will be met, including by, for example, formal services, informal caregivers, or certain equipment or supplies. *See id.* at 13.[9]

Plaintiffs maintain that "[t]he settlement offers the class members the most important, most tangible form of relief" they seek. *Padro*, 2013 WL 5719076, at *7. All of the relevant *Grinnell* factors support approval of the proposed settlement and satisfy Rule 23(e)'s requirements of substantive fairness, reasonableness, and adequacy.

## IV.  PLAINTIFFS' PROPOSED FORM AND MECHANISM OF NOTICE SATISFY THE REQUIREMENTS OF RULE 23(e)(1)

The Parties' intended notice procedures will provide Class members with adequate notice in accordance with Rule 23(e)'s requirements. In order to approve a class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound

---

[9] The Settlement Stipulation also provides that the Court "shall retain jurisdiction for two years after the Effective Date [of the Settlement Stipulation] . . . solely to enforce compliance with the terms of [the Settlement] Stipulation." *Id.* at 21.

by the proposal." Fed. R. Civ. P. 23(e)(1).  The method of notice in class actions brought under Rule 23(b)(2) is left to the discretion of the Court.

In *Handschu v. Special Services Division*, the U.S. Court of Appeals for the Second Circuit found that, provided the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," 787 F.2d 828, 832–33 (2d Cir. 1986) (quoting *Mullane v. Cent. Hanover Tr. Co.*, 339 U.S. 306, 314 (1950)) and "express[ed] no opinion on the merits of the settlement," *id.* at 833, "the district court has virtually complete discretion as to the manner of giving notice to class members." *Id.*  In addition, Rule 23's requirement that class action notices be written in easily understandable language should apply equally to settlement notices.  7B Charles A. Wright et al., *Federal Practice and Procedure*, § 1797.6 (3d ed. 2013); *see also Macedonia Church v. Lancaster Hotel, LP*, No. 05-0153, 2011 WL 2360138, at \*12 (D. Conn. June 9, 2011) (approving wording of class notice).

Here, no later than thirty days after the Court enters the Proposed Order, Healthfirst will send the Class Notice, in the form provided in Exhibit B to the Settlement Stipulation, to all Medicaid enrollees in the Healthfirst MLTCPs as of the date the Proposed Order is entered.  *See* Stevens Decl. ¶ 87; Garcia Decl. ¶ 45.  This is a manner reasonably calculated to reach all Class members.

The Class Notice moreover provides Class members with adequate information about the settlement terms and contains clear instructions on how to review the Settlement Stipulation in full.  *See generally* Settlement Stipulation, Ex. B (Class Notice).  The description of the settlement and the affected class is clear and concise and an oral translation will be available in all languages routinely used to issue notices to Medicaid enrollees in the Healthfirst MLTCPs.

24

Additionally, the Class Notice advises Class members of their rights to comment on—and object to—the Settlement Stipulation, and contains clear and obvious instructions for submitting such comments and objections.  *See generally id.*  Furthermore, the Class Notice will inform Class members of the date and time of the Fairness Hearing at which their opinions can be heard and how to submit any objections to the Proposed Settlement.  *Id.*

For these reasons, Plaintiffs respectfully request that this Court approve the proposed form of Class Notice to the class members.

**V.    PLAINTIFFS RESPECTFULLY REQUEST THE OPPORTUNITY TO ADDRESS ANY OBJECTIONS FOLLOWING THE FAIRNESS HEARING**

At the Fairness Hearing, which Plaintiffs request be scheduled for by the Court, Class members will have the opportunity to voice objections to the Settlement Stipulation.  Plaintiffs respectfully request the opportunity to address these objections, if any, in a post-hearing memorandum of law submitted promptly after the conclusion of the hearing.

**VI.    CONCLUSION**

For all the reasons stated herein, Plaintiffs respectfully ask the Court to grant: (1) their Motion for Class Certification in Connection with the Settlement; (2) Appointment of Class Representatives and Class Counsel; (3) Preliminary Approval of the Parties' Settlement Stipulation; and (4) Approval of Notice to Class Members.

DATED: _____4, 20_____, 2018

Jane Greengold Stevens
NEW YORK LEGAL ASSISTANCE
GROUP
7 Hanover Square, 7th Floor
New York, NY 10004
Tel: 212-613-5031
JStevens@nylag.org

PAUL WEISS RIFKIND WHARTON &
GARRISON LLP
Karen R. King
Emily A. Weissler
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3784

*Attorneys for Caballero Plaintiffs*

THE LEGAL AID SOCIETY
Judith Goldiner
Ken Stephens
199 Water Street
New York, NY 10038
Tel: 212- 577-3300
jgoldiner@legal-aid.org
kstephens@legal-aid.org

WINSTON & STRAWN LLP
Jeffrey L. Kessler
200 Park Avenue
New York, NY 10166
Tel: 212-294-4698
JKessler@winston.com

*Attorneys for Bucceri Plaintiffs*

26