UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLGA CABALLERO; JIE DU, by her next friend MICHAEL TONG; ALEJANDRA NEGRON; MARIANO VAZQUEZ, by his next friend IRAIDA VASQUEZ; and JUAN SANTOS, by his next friend RITA BAEZ, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>            - against -<br><br>SENIOR HEALTH PARTNERS, INC; HEALTHFIRST, INC; HF MANAGEMENT SERVICES, LLC; HEALTHFIRST HEALTH PLAN, INC.; XYZ CORPORATIONS 1-10; and HOWARD ZUCKER, as Commissioner of the New York State Department of Health,<br><br>                              Defendants. | 16-cv-00326 (CBA) (CLP) |

**DECLARATION OF JANE GREENGOLD STEVENS IN SUPPORT OF THE
PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT
<u>STIPULATION AND  RELATED MATTERS</u>**

Jane Greengold Stevens declares under 28 U.S.C. § 1746:

1.      I am the Co-Director of the Special Litigation Unit at the New York Legal Assistance Group ("NYLAG"), at 7 Hanover Square, New York, NY 10004, which represents the *Caballero* Plaintiffs in the above-captioned matter.  I am fully familiar with the facts of the *Caballero* case and with the negotiations leading to the settlement of the combined *Caballero* and *Bucceri* cases, and respectfully submit this declaration in support of Plaintiffs' Unopposed Motion for Class Certification in Connection with the Settlement; Appointment of Class Representatives and Class Counsel; Preliminary

Approval of the Parties' Stipulation of Settlement ("Settlement Stipulation"); and Approval of Notice to Class Members.

2. I have been personally involved in the negotiations that led to the Settlement Stipulation.

3. All terms herein have the same meaning ascribed to them in the Parties' Settlement Stipulation.

4. The negotiations were conducted by counsel that represented the Parties throughout this litigation. The *Caballero* Plaintiffs were represented by the New York Legal Assistance Group ("NYLAG"); and Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"). The *Bucceri* Plaintiffs were represented in *Bucceri* v. *Zucker*, No. 16 Civ. 8274 (VSB) (S.D.N.Y. 2016), by the Legal Aid Society and Winston & Strawn LLP.

5. NYLAG is a nonprofit legal services organization that provides high quality, free civil legal services to low-income New Yorkers who cannot afford attorneys. NYLAG has successfully litigated class actions on behalf of low-income homecare recipients. *See Shakhnes* v. *Eggleston*, 740 F. Supp. 2d 602 (S.D.N.Y. 2010), *aff'd in part, denied in part*, 689 F.3d 244 (2d Cir. 2012) (challenging Fair Hearing delays); *Strouchler* v. *Shah*, 891 F. Supp. 2d 504 (S.D.N.Y. 2012) (challenging home care reductions); *Johnson* v. *Shah*, No. 11 Civ. 1956 (E.D.N.Y.); and *Spitzer* v. *Shah*, No. 11 Civ. 3157 (E.D.N.Y.) (challenging reductions in home health services); *Bernam* v. *Daines*, No. 10 Civ. 2658 (E.D.N.Y.) (challenging home health service reductions, Fair Hearing denials, and failures to provide proper notices of reduction, denial, or termination). In addition, NYLAG has litigated countless other class actions on behalf of

individuals who need legal assistance. *See, e.g.*, *Mayfield* v. *Asta*, No. 14 Civ. 5006 (S.D.N.Y.) (class action on behalf of consumers subject to unfair debt collection); *Gibbons* v. *Riley*, No. 94 Civ. 5212 (E.D.N.Y.) (class action on behalf of student loan borrowers).

6. Paul, Weiss is an international law firm representing clients ranging from large corporations and financial institutions to pro bono clients in need of legal representation in both criminal and civil matters. Paul, Weiss has represented clients in litigation concerning civil rights, women's rights, rights of asylum, prisoners' rights, and the treatment of homeless people. Paul, Weiss has served as counsel in cases, including complex class action matters, protecting the rights of the underserved, including *Medina* v. *Fischer*, No. 11 Civ. 176 (S.D.N.Y.) (disabilities rights class action on behalf of legally blind or severely visually impaired prisoners in custody); *Brito* v. *N.Y. City Housing Auth.*, No. 09 Civ. 1621 (E.D.N.Y.) (disability rights class action on behalf of public housing residents with mobility impairments regarding NYCHA's failure to maintain elevators in reasonable operating condition); *Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. Inc.* v. *Port Auth. of N.Y. and N.J.*, No. 05 Civ. 3835 (S.D.N.Y.) (Title VII intentional discrimination case on behalf of Asian-American Port Authority police officers denied promotions to Sergeant); and *O'Toole et al.* v. *Cuaomo*, No. 13 Civ. 4166 (E.D.N.Y.) (disability rights class action on behalf of mentally ill residents of adult homes in New York City regarding living conditions in such adult homes).

7. The Initial Complaint in the *Caballero* matter was filed on January 21, 2016. (Dkt No. 1.) An Amended Complaint was filed on April 1, 2016. (Dkt No. 29.)

8. Prior to filing the Initial Complaint and before entering settlement negotiations, NYLAG reviewed in detail over one thousand past Fair Hearing decisions that specifically concerned Healthfirst enrollees challenging a reduction in home healthcare and represented an additional thirty Healthfirst enrollees in Fair Hearings regarding home healthcare reductions between July 2015 and September 2016.

**The Class**

9. In the Settlement Stipulation in the combined cases, *Caballero* and *Bucceri*, the Parties have stipulated to certification of the following class for purposes of settlement: all current and future Medicaid recipients who receive home care services through Defendants Senior Health Partners, Inc. and Healthfirst Health Plan, Inc. ("Healthfirst Defendants").

10. Each of the Named Plaintiffs in *Caballero* requires home care services in order to live safely in the community. They each have multiple chronic conditions, many of which do not improve and are degenerative, and require home care services for basic activities of daily living including ambulation, toileting, and cooking. Each receives home care services that were reduced, as described below. In addition to the individual allegations set forth below, all named Named Plaintiffs allege that Healthfirst MLTC Plans did not initially consider whether each Named Plaintiff was entitled to "span of time" care.

**The Named Plaintiffs in *Caballero***

11. The Parties have stipulated to appoint the Named Plaintiffs as class representatives.

12. The experiences of the Named Plaintiffs in this case are typical of the

experiences of the Class Members.

13. The following accounts are based on conversations that I and others at NYLAG have had with the Named Plaintiffs in *Caballero*, as well as review of these individuals' documents.

### *Olga Caballero*

14. Olga Caballero is a 69-year-old woman who lives alone in Brooklyn and receives Medicaid and Medicare.

15. She suffers from numerous medical conditions, including diabetes mellitus, lower back pain, osteoarthritis, asthma, high blood pressure, chronic obstructive pulmonary disease, depression, and dementia.

16. Because of her medical conditions, Ms. Caballero needs assistance with many of her daily activities, including bathing and getting dressed, cooking, shopping, laundry, cleaning, moving about, toileting, and incontinence care.

17. Until October 1, 2015, Ms. Caballero received 35 hours per week of home care services through Senior Health Partners; since then, she has received home care services through Healthfirst Defendants.

18. Ms. Caballero's 35 hours of home care services are insufficient to meet her needs.

19. On or about November 2, 2015, Ms. Caballero received a notice stating that Healthfirst Defendants would reduce her home care services by over 77 percent to a mere eight hours per week effective November 17, 2015, based on an assessment done on October 6, 2015.

20. The notice gave the false impression that the reduction was required by

New York State regulations.

21.     The notice failed to give Ms. Caballero the information needed to provide her with a meaningful basis on which to decide whether to ask for a Fair Hearing or the information needed to defend against the proposed reduction at a Fair Hearing.

22.     The notice contained numerous deficiencies, including, but not limited to, false factual allegations, misleading references to regulations, and illegitimate substantive reasons for the reduction.

23.     The grounds for reduction alleged in the notice are all either false or legally invalid.

24.     Despite the fact that the nurse who assessed Ms. Caballero in October 2015 found her condition and need for assistance to be unchanged, she recommended that Ms. Caballero's care be reduced from 35 hours per week to 8 hours per week.

25.     Because Ms. Caballero is a MAP enrollee, she was required to file an internal appeal before requesting a fair hearing.  On November 10, 2015, Ms. Caballero's daughter verbally requested an internal appeal with Healthfirst Defendants.  However, Ms. Caballero's hours were reduced shortly thereafter.  Thus, for several weeks, Ms. Caballero was denied necessary care and left alone for extended periods of time.

26.     The notice with Ms. Caballero's appeal decision did not provide sufficient information about the basis for the decision to enable Ms. Caballero to make a meaningful decision about whether to seek a fair hearing.

27.     Because Ms. Caballero still needs home care services to remain safely at home, and because she still receives those services from Healthfirst Defendants, she is vulnerable to a repetition of the harms she has already suffered.

### *Jie Du*

28. Jie Du is a 98-year-old woman who lives alone in Brooklyn and receives Medicaid. Michael Tong is her son-in-law and Next Friend. Ms. Du brought this action by her next friend because she cannot adequately represent herself or understand the nature of the claims at issue.

29. Ms. Du suffers from numerous medical conditions, including blindness, dementia, osteoarthritis, and restlessness and agitation, all of which significantly limit her ability to function on her own.

30. Ms. Du receives home care in the amount of 42 hours per week, six hours per day, seven days a week. Her family cares for her the rest of the time.

31. Ms. Du struggles to stay safe and to accomplish her necessary daily activities with her authorized 42 hours of home care.

32. In December 2015, Ms. Du received a notice from Healthfirst Defendants, dated December 15, 2015, stating that her home care services would be reduced by over 28 percent from 42 hours per week to 30 hours per week, effective December 30, 2015, based on an assessment done on November 24, 2015.

33. The notice gave the false impression that the reduction was required by New York State regulations.

34. The notice failed to give Ms. Du the information needed to provide her with a meaningful basis on which to decide whether to request a Fair Hearing or the information needed to defend against the proposed reduction at a Fair Hearing.

35. The notice contained numerous deficiencies, including false factual allegations, misleading references to regulations, and substantive reasons for the reduction that are not legitimate.

36. The grounds for the reduction alleged in the notice were not based on any changes in Ms. Du's actual condition or needs, but were only based on changes in the way that Healthfirst Defendants characterized her needs in its assessments and ATSPs.

37. Despite the deficiencies in Ms. Du's November 2015 notice from Healthfirst Defendants, Ms. Du's son-in-law timely requested a Fair Hearing on December 22, 2015.

38. Ms. Du's Fair Hearing was held on January 25, 2016. At the hearing, Healthfirst Defendants withdrew their notice of reduction and agreed to maintain Ms. Du's 42 hours of home care services, for now.

39. Because Ms. Du still needs home care services to remain safely at home, and because she still receives those services from Healthfirst Defendants, she is vulnerable to a repetition of the harms she already suffered.

*Alejandra Negron*

40. Alejandra Negron is a 73-year-old woman who lives alone in Manhattan and receives Medicaid and Medicare.

41. Ms. Negron suffers from numerous medical conditions, including severe asthma, emphysema, chronic obstructive pulmonary disease, diabetes, osteoporosis, osteoarthritis, chronic pain, and coronary artery disease.

42. Because of her medical conditions, Ms. Negron cannot walk without help, and needs assistance with virtually all of her daily activities, including bathing, getting dressed, cooking, shopping, laundry, cleaning, and using the bathroom.

43. Prior to January 2015, Ms. Negron received 55 hours per week of home care services.

44. In January 2015, Ms. Negron learned that Healthfirst Defendants had decided to reduce her home care services to 50 hours per week. Ms. Negron did not receive written notice about the reduction and did not know of her right to a fair hearing. She thus was unable to challenge the reduction and her hours were reduced.

45. Ms. Negron struggles to accomplish all of her daily activities with her authorized 50 hours of home care. Her family members care for her in the evening and on weekends, but cannot care for her during weekdays because of their jobs.

46. On or about November 29, 2015, Ms. Negron received a notice from Healthfirst Defendants.

47. The notice stated that Ms. Negron's home care services would be cut in half from 50 hours per week to 25 hours per week, effective December 3, 2015, based on an assessment conducted on October 15, 2015.

48. The notice stated that the reason for the 50 percent reduction is that the "requested service" (technically, the amount of care she was already receiving) was no longer medically necessary and that the reduction in care was necessary to correct a mistake in the previous personal care services authorization.

49. The notice gave the false impression that the reduction is required by New York State regulations.

50. The notice failed to give Ms. Negron the information needed to provide her with a meaningful basis on which to decide whether to ask for a Fair Hearing or with the information needed to adequately defend against the proposed reduction at a Fair Hearing.

51. The notice contained numerous deficiencies, including false factual allegations, misleading references to regulations, and substantive reasons for the reduction that are not legitimate.

52. The grounds for the reduction alleged in the notice are not based on changes in Ms. Negron's actual condition or needs, but only on the way that Healthfirst Defendants characterized her needs in their assessments and ATSPs.

53. The grounds for reduction alleged in the notice are all either false or legally invalid.

54. On December 5, 2015, Ms. Negron's care was restored pursuant to an aid-continuing directive.

55. Ms. Negron stated that if the threatened reduction went into effect she might consider suicide because she does not want to go to a nursing home and knows that it would be impossible for her to remain safely in her home with only 25 hours of care per week.

56. Ms. Negron's Fair Hearing was held on January 25, 2016. At the hearing, Healthfirst Defendants withdrew their notice of reduction and agreed to maintain Ms. Negron's 50 hours of home care services for now.

57. Because Ms. Negron still needs home care services to remain safely at home, and because she still receives those services from Healthfirst Defendants, she is

vulnerable to a repetition of the harms.

*Mariano Vazquez*

58. Mariano Vazquez is an 83-year-old man who lives alone in Manhattan and receives Medicaid and Medicare. He cannot understand the Fair Hearing process, his rights to challenge the reductions, or the possibility of retaining counsel. As a result, his niece Iraida Vasquez is acting as his Next Friend in this case.

59. Mr. Vazquez suffers from numerous medical conditions including residual effects of meningitis in childhood, epilepsy, osteoporosis, tremors, and polyosteoarthritis. He has been diagnosed with prostate cancer in the past, and has recently been evaluated for anemia. Because of his meningitis, he has been disabled to some degree for all of his life, but his conditions have significantly worsened as he has aged.

60. Until December 24, 2015, Mr. Vazquez received 35 hours per week of home care services through Senior Health Partners.

61. Mr. Vazquez's 35 hours of home care services were provided five hours per day, seven days per week. Even those hours were not sufficient, in part because he has many medical appointments that require his aide's assistance to attend. If the appointments are scheduled later in the afternoon, he cannot attend them.

62. On or about December 24, 2015, Mr. Vazquez received a notice stating that Senior Health Partners would reduce his home care services to 24 hours per week effective January 8, 2016, based on an assessment done November 30, 2015.

63. On or about January 8, 2016, Mr. Vazquez's home care was reduced from 35 hours per week to 24 hours per week.

64. This reduction left Mr. Vazquez with four hours of care per day, six days a

week.  He had no care at all on Sundays.

65. The notice gave the false impression that the reduction was required by New York State regulations.

66. The notice did not give Mr. Vazquez the information necessary to provide him with a meaningful basis to decide whether to request a Fair Hearing, and it did not provide him with the information necessary to defend against the proposed reduction at a Fair Hearing.

67. The grounds for the reduction alleged in the notice are based not on any changes in his actual condition or needs, but rather on changes in the way that Healthfirst Defendants characterized his needs in their assessments and ATSPs.

68. Mr. Vazquez's fair hearing was scheduled to be held on February 22, 2016.

69. Mr. Vazquez did not receive the notice of the fair hearing and so did not attend.  This resulted in a default, and his care was set at the reduced amount because he did not contest the reduction.

70. After Mr. Vazquez defaulted his fair hearing, he contacted NYLAG.  On March 10, 2016 NYLAG was able to have his fair hearing reopened.

71. His fair hearing was held on April 5, 2016.

72. On April 26, 2016 a Decision After Fair Hearing was issued which found that the notice Mr. Vazquez received was defective.  The decision also found that Mr. Vazquez was, in fact, entitled to more hours than he had been receiving and ordered Senior Health Partners to authorize 45.08 hours per week of care for Mr. Vazquez.

### *Juan Santos*

73. Juan Santos was an elderly man who lived with his daughter in the Bronx

and received Medicaid and Medicare.  Due to his medical conditions, Mr. Santos needed total assistance with almost all of his activities of daily living.

74. Mr. Santos received homecare services through Healthfirst Defendants.

75. Mr. Santos's homecare services also were unfairly reduced and were reduced without adequate notice.  Mr. Santos was represented by a NYLAG attorney.

76. Mr. Santos passed away, and a suggestion of death was filed upon record on December 5, 2017.

**The Settlement Negotiations**

77. Initial settlement discussions in *Caballero* began in the Spring of 2016. Beginning in September, 2016 Magistrate Judge Pollak became actively involved in assisting settlement negotiations.  (Dkt No. 54.)

78. *Bucceri* was filed in the Southern District of New York on October 24, 2016, and in November 2016, settlement talks began with Plaintiffs in both cases and all Defendants.

79. In addition to the settlement negotiations led by Magistrate Judge Pollak, Counsel for Plaintiffs and Defendants conducted numerous meetings both by phone and in person over the settlement negotiations period.

80. Counsel for Plaintiffs and Defendants appeared before the Court on the following dates to update the Court on the status of settlement negotiations and to seek the assistance of the Court:  September 7, 2016; November 29, 2016; December 16, 2016, February 1, 2017; March 28, 2017; April 20, 2017; June 1, 2017; June 22, 2017; and November 1, 2017.  (*See* Dkt. Nos. 54, 61, 65, 69, 72, 73, 74, 78, 80.)

81. Because of the length of these settlement negotiations, the Parties were directed by the Court to submit briefing schedules on November 16, 2017.  (Dkt. No. 80.)

82. In negotiating the terms of the Settlement Stipulation, Defendant Department of Health ("DOH") provided Caballero class counsel with ninety individual case files, each 40 to 50 pages long, as well as documents concerning Defendant DOH's evaluation of Healthfirst Defendants.

83. The Settlement Stipulation was actively negotiated for over eighteen months, from on or about September 2016 through March 2018.

84. The settlement negotiations were conducted at arm's length by litigating attorneys for all Parties.

85. The proposed Settlement, which all of the Named Plaintiffs have approved, provides virtually all relief that the case presently seeks on behalf of class members, including the following:

    a. Healthfirst Defendants will not reduce, or threaten to reduce, any member's care based on a prior mistake or based on an eight hour cap on some services. (*See* Settlement Stipulation at 7–8.)

    b. Healthfirst Defendants will comply with DOH guidance issued in November 2016 concerning what a notice of reduction must state, and the methods Healthfirst must use to determine members' needs. (*See id.* at 7–9.)

    c. Healthfirst Defendants will substantially revise several of its policies for providing home care services, including policies relating to ways members' home care services are recorded and tracked and policies for how to review requests for home care services. (*See id.* at 9–11.)

      d.      Defendant DOH will conduct a training for MLTCPs on the standards and requirements related to reductions in home care services, denials of requests for increases in home care services, and notices for such reductions and denials. (*See id.* at 15.)

      e.      Defendant DOH will maintain scheduled audits of MLTCPs, including Healthfirst, to monitor compliance with requirements relating to administration of the health care plans. (*See id.* at 16.)

      f.      Any Healthfirst member whose care was reduced between January 1, 2015 and May 11, 2018, who did not receive adequate notice or a chance for a Fair Hearing, and who is still receiving the reduced amount of care, will have his or her care restored by Healthfirst Defendants or will receive a new adequate notice and a chance for a Fair Hearing to challenge the old reduction in care. (*See id.* at 11–12.)

      86.      Attached as Exhibit 1 is a true and correct copy of the Settlement Stipulation, filed on April 20, 2018, with accompanying exhibits. Attached as Exhibit 2 is a true and correct copy of the Side Agreement to the Settlement Stipulation, filed on April 20, 2018, that addresses public statements concerning this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York
April 19, 2018

_____
Jane Greengold Stevens