UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLGA CABALLERO; JIE DU, by her next friend MICHAEL TONG; ALEJANDRA NEGRON, MARIANO VAZQUEZ, by his next friend IRAIDA VASQUEZ; and JUAN SANTOS, by his next friend RITA BAEZ, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>       - against -<br><br>SENIOR HEALTH PARTNERS, INC.; HEALTHFIRST, INC.; HF MANAGEMENT SERVICES, LLC; HEALTHFIRST HEALTH PLAN, INC.; XYZ CORPORATIONS 1-10; and HOWARD ZUCKER, as Commissioner of the New York State Department of Health,<br><br>                              Defendants. | 16-cv-00326 (CBA) (CLP) |

**DECLARATION OF BELKYS GARCIA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION IN CONNECTION WITH SETTLEMENT, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL, PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT STIPULATION, AND APPROVAL OF NOTICE TO CLASS MEMBERS**

Belkys Garcia declares pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a member of the Bar of this Court and a staff attorney at The Legal Aid Society, counsel for Plaintiffs Madeline Bucceri, Patricia Trujillo, and Lourdes Lo in this matter. I make this Declaration in support of Plaintiffs' Motion for Class Certification in Connection with Settlement, Appointment of Class Representatives and Class Counsel, Preliminary Approval of the Parties' Settlement Stipulation, and Approval of Notice to Class Members and to present evidence the Plaintiffs rely upon for the class certification

motion.[1] I am basing the facts set forth in this declaration, in part, on personal knowledge and the books and records of The Legal Aid Society. In addition, where I set forth facts about the procedures used or not used by the Healthfirst Managed Long Term Care ("MLTC") plans and facts about fair hearings, I base those facts on my experience representing numerous clients who receive home care services from the Healthfirst MLTC plans and from litigating against those plans. Where I set forth facts about Plaintiffs, I base those facts on my representation of them.

2. I have been personally involved in the negotiation of this settlement.

3. The proposed class members are elderly and/or disabled and are medically vulnerable. Their medical conditions are fluid and they face a not insubstantial risk of death. Indeed, one prospective named plaintiff died just prior to the filing of this case while her daughter was juggling two jobs and struggling to provide the hours of home care assistance that her mother needed, but which the Healthfirst MLTC plan was refusing to provide. I am attaching a declaration from Luann Eulin, the daughter of the deceased prospective class member, as Exhibit A to this declaration. Likewise, Plaintiff Madeline Bucceri passed away on December 16, 2017, prior to receiving any of the class-wide relief sought in this case.

4. When *Bucceri* v. *Zucker*, No. 16 Civ. 8274 (VSB) (S.D.N.Y. Oct. 24, 2016) ("*Bucceri*") was filed, Ms. Bucceri received thirty-three hours per week of home care services

---

[1] This Declaration and the Motion it supports apply equally to the parties in *Bucceri v. Zucker*, No. 16 Civ. 8274 (VSB) (S.D.N.Y. Oct. 24, 2016); however, because *Bucceri* has not been officially consolidated with *Caballero*, only the *Caballero* action is reflected in the above caption. The *Bucceri* parties have moved the Southern District of New York court to transfer the *Bucceri* action to the Eastern District of New York, and Plaintiffs seek consolidation of the two actions by means of the Motion this Declaration supports.

   authorized by Senior Health Partners ("SHP) and sought ten hours a day, seven days a week, for a total of seventy hours of home care services per week.

5. When *Bucceri* was filed, Ms. Trujillo received forty hours of home care services per week from CompleteCare, which is operated by defendant Healthfirst Health Plan, Inc., and sought eight hours of home care services per day, seven days a week, for a total of fifty-six hours of home care services per week.

6. When *Bucceri* was filed, Ms. Lo received thirty-nine hours of home care services per week from SHP and sought twelve hours of home care services per day, seven days a week, for a total of eighty-four hours of home care services per week.

7. Plaintiffs have not made a previous application for similar relief.

8. In this action, Plaintiffs seek class-wide declaratory and injunctive relief under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, the Medicaid Act and Article I and the Due Process Clauses of the United States Constitution, as well as state law claims.

9. The proposed plaintiff class consists of all current and future New York State Medicaid recipients who receive home care services through the Healthfirst MLTC plans. There are approximately 14,500 disabled individuals who make up the proposed class. *See* New York State Department of Health, Recipients Enrolled in Mainstream Medicaid Managed Care by County, Plan, Aid Category, and NYSoH 30, available at https://www.health.ny.gov/health_care/managed_care/reports/enrollment/monthly/2017/docs/en12_17.pdf, annexed hereto as Exhibit B.

10. The negotiations were conducted by counsel that represented the Parties throughout this litigation. The *Caballero* Plaintiffs were represented by the New York Legal Assistance

Group ("NYLAG"); and Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"). The *Bucceri* Plaintiffs were represented by The Legal Aid Society and Winston & Strawn LLP.

11. The Legal Aid Society is a nonprofit legal services organization that provides free civil legal services to low-income New Yorkers. The Legal Aid Society has extensive experience litigating complex class actions involving Medicaid, disability discrimination, and public benefits. *See, e.g., Cruz v. Zucker*, 14 Civ. 4456 (JSR) (S.D.N.Y.) (challenging the legality of restrictions on Medicaid services for a class of approximately 700 transgender New Yorkers); *Lovely H. v. Eggleston*, 05 Civ. 6920 (LTS) (S.D.N.Y.) (challenging the New York City Human Resources Administration's ("HRA") discrimination against approximately 30,000 public assistance recipients on the basis of disability); *M.K.B. v. Eggleston*, 05 Civ. 10446 (JSR) (S.D.N.Y.) (challenging HRA's and the Office of Temporary and Disability Assistance's ("OTDA")) erroneous denial of benefits to a class of over 20,000 immigrants); *Reynolds v. Giuliani*, 98 Civ. 8877 (WHP) (S.D.N.Y) (challenging unlawful deterrence and denial of benefits by HRA to New Yorkers eligible for public assistance and the State's deliberate indifference).

12. Winston and Strawn LLP is an international law firm representing a wide array of clients, ranging from large corporations to pro bono clients in need of assistance. Winston's attorneys have extensive experience in enforcing the rights of plaintiffs in all aspects of complex, class action litigation. Winston is regularly engaged to represent plaintiffs in connection with class claims in federal and state courts, at both the trial and appellate levels. *E.g., Holmes e al. v. Godinez, et al.*, 1:11-cv-02961 (N.D. Ill. May 4, 2011) (representing a class of deaf and hard of hearing prisoners against the Illinois Department

of Corrections); *White v. NFL*, 822 F. Supp. 1389 (D. Minn. 1993) (representing a class of NFL players through settlement and enforcement for a period of 17 years); *Brady v. National Football League*, 644 F.3d 661 (8th Cir. 2011).

**Background**

13. My colleagues and I filed the *Bucceri* action after Legal Aid counsel repeatedly encountered clients who were improperly denied requests for increases in home care services or struggled even to lodge a request with Defendant Healthfirst given Healthfirst's intake procedures, despite the State's purported oversight.

14. Legal Aid counsel assisted 36 Healthfirst enrollees with requests for increases between July 2015 and September 2016.

15. Under my supervision, a law graduate searched fair hearing decisions dated between June 1, 2015 and July 18, 2016 in which SHP was the provider of home care services by searching for the following keywords: "personal care," "Senior Health Partners," and "increase."

16. The review found that 135 individuals requested a fair hearing following SHP's denials of their requests for increases. The review found that only twenty percent of SHP's denials were upheld on appeal: of the 135 cases reviewed where enrollees filed for a fair hearing to overturn SHP's denial of their requests for increases, the administrative law judges ("ALJ"s) reversed ninety denials and upheld only twenty-six denials. The nineteen remaining cases not upheld or reversed were resolved by a stipulation between SHP and the enrollee resulting in an increase in hours.

**Plaintiffs**

*Madeline Bucceri*

17. At the time of filing, Ms. Bucceri was a ninety-three year-old woman living in Richmond County, enrolled with Senior Health Partners.

18. Ms. Bucceri needed assistance with all activities of daily living throughout the day. Ms. Bucceri required ten hours of home care services per day, seven days a week, for a total of seventy hours of home care services per week. Ms. Bucceri's July 12, 2016 assessment record is attached here as Exhibit C.

19. In an assessment dated July 12, 2016, SHP found that Ms. Bucceri required "maximal," "extensive," or "total" assistance with meal preparation, ordinary housework, managing medication, phone use, stairs, shopping, transportation, equipment management, bathing, personal hygiene, dressing, walking, locomotion, and toilet use. One SHP nurse assessor noted Ms. Bucceri's unsteady gait and that Ms. Bucceri had recently fallen because of her inability to bend. The SHP nurse also noted that Ms. Bucceri experiences bladder incontinence.

20. Despite finding that Ms. Bucceri required assistance with walking inside her home and toileting, that same assessment recommended only 175 minutes total per week for toileting. The assessment results did not indicate that toileting needs could not be scheduled.

21. The assessment results recommended an authorization of only 30.15 hours per week of home care services.

22. Because of a fall shortly prior to the assessment in July 2016, Ms. Bucceri requested an increase in care hours to seventy hours of home care services per week. SHP denied Ms.

     Bucceri's request because the amount of time was "not medically necessary," and informed her that she would continue to receive only thirty-three hours per week.

23. Ms. Bucceri passed away on December 16, 2017, and a Suggestion of Death was filed on the record.

*Patricia Trujillo*

24. At the time *Bucceri* was filed, Patricia Trujillo was a seventy-one year-old woman living in New York County, enrolled in CompleteCare.

25. In an assessment dated April 1, 2016, CompleteCare determined that Ms. Trujillo requires assistance with meal preparation, ordinary housework, managing finances, managing medications, stairs, shopping, transportation, equipment management, bathing, personal hygiene, dressing, walking, transferring and toilet use. The assessing nurse noted: "Member has unsteady gait, member ambulates with a cane and at times needs to be assisted (physical guidance without taking weight) by one person." Ms. Trujillo's April 1, 2016 assessment record is attached here as Exhibit D.

26. CompleteCare claimed that Ms. Trujillo's sister was a caregiver for her on the weekends. Based on conversations I've personally had with Ms. Trujillo, this assertion is untrue.

27. CompleteCare determined that Ms. Trujillo needs eight hours of services per day, Monday through Friday, for a total of forty hours per week.

28. CompleteCare's assessment indicated that Ms. Trujillo requires no home care assistance on the weekends. Based on my personal conversations with Ms. Trujillo, this assertion is incorrect because she does not have assistance from her sister on the weekends and thus needs services during that time. Ms. Trujillo required eight hours of home care services

per day, seven days a week (not just five) for a total of fifty-six hours of home care services per week.

*Lourdes Lo*

29. At the time of filing, Lourdes Lo was a seventy-four year-old woman living in New York County, enrolled with SHP.

30. According to an assessment dated August 4, 2016 completed by SHP, Ms. Lo needed assistance with all activities of daily living throughout the day, Ms. Lo required twelve hours of home care per day, seven days a week, for a total of eighty-four hours of home care services per week. Ms. Lo's August 4, 2016 assessment record is attached here as Exhibit E.

31. As a result of that assessment, SHP determined that Ms. Lo required assistance with meal preparation, ordinary house work, managing finances, managing medications, stairs, shopping, transportation, equipment management, bathing, personal hygiene, dressing, walking, transferring, toilet transfer, and toilet use. The assessing nurse noted that Ms. Lo required assistance with activities of daily living due to her limited range of motion and chronic pain caused by a fall in February 2016. The assessment states that Ms. Lo was incontinent of urine two to three times per day. The assessment notes that Ms. Lo reported that she had fallen four or five times in the three months prior to the assessment.

32. SHP's assessment results concluded that Ms. Lo required fifteen minutes of incontinence care twice a day for a total of 210 minutes of incontinence care per week. The assessment results indicated that Ms. Lo will require ten minutes per day of assistance with toilet transferring for a total of seventy minutes per week. The assessment did not indicate that Ms. Lo's toileting needs cannot be scheduled.

33. The assessment recommended an authorization of 27.48 hours of home care services per week.

34. SHP authorized Ms. Lo for thirty-nine hours of home care services per week.

35. In July of 2016, Ms. Lo contacted The Legal Aid Society seeking assistance obtaining an increase in her home care hours. On July 20, 2016, I contacted SHP on her behalf to request additional home care hours. Ms. Lo's Nurse Care Manager told me that SHP would not accept her request for an increase in hours because Ms. Lo had recently agreed to a decrease to thirty-five hours per week and because there was no evidence that her condition had changed. I informed the Nurse Care Manager of Ms. Lo's right to request a concurrent review of her hours and to have SHP accept her request. About a week later, SHP confirmed that it would agree to process Ms. Lo's request.

36. Ms. Lo required assistance twelve hours per day, seven days per week, for a total of eighty-four hours of home care services per week.

37. In December of 2017, I received word from Ms. Lo's daughter that her condition had worsened, and that Ms. Lo was temporarily residing in a nursing home.

38. On March 6, 2017, *Bucceri* counsel filed a stipulation to amend the caption of this case to name Betty Francisco as named plaintiff on behalf of Ms. Lo, attached as Exhibit F.

**Settlement Negotiations**

39. Settlement negotiations with Defendants and *Caballero* counsel spanned from September 2016 through April 2018.

40. Although there have not been any dispositive motions in this case so far, some informal discovery for the purposes of settlement has already been exchanged, which I have reviewed.

41. The parties spent thousands of hours of work combined to reach a settlement reflecting difficult concessions and compromises on both sides.

42. These negotiations produced numerous revisions of the Defendants' systems and policies for providing homecare services, including additional reporting requirements by the Department of Health.

**Class Notice**

43. The Class Notice provides class members with adequate information about the settlement terms.

44. The Class Notice also contains clear instructions on how to review the Settlement Stipulation in full.

45. The Parties intend to either mail or email the Class Notice, in the form provided in Exhibit B to the Settlement Stipulation, to all Healthfirst plan participants.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 19, 2018

_____
Belkys Garcia